## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| N.M., a Minor, and | : |
| C.F., as Parent and | : |
| Guardian of N.M. | : |
| | : |
|     Plaintiffs, | : |
| v. | :   **3:15-CV-01585** |
| | :   **(JUDGE MARIANI)** |
| WYOMING VALLEY WEST | : |
| SCHOOL DISTRICT | : |
| | : |
|     Defendants. | : |
| | : |

## MEMORANDUM OPINION

Presently before the Court is Defendant Wyoming Valley West School District's ("Defendant" or the "School District") Motion to Dismiss Plaintiffs N.M. and C.F. ("Plaintiffs") complaint (the "Complaint") for failure to state a claim upon which relief can be granted. (Doc. 6). For the reasons that follow, the Court grants Defendant's motion in part and denies it in part.

## I.    FACTUAL BACKGROUND

The following allegations of facts are taken from the Complaint and the administrative record attached thereto. (Docs. 1, 1-1, 1-2, 1-3).

### A. The Parties

Plaintiff N.M. is a 14-year-old student who permanently resides with his mother, Plaintiff C.F., within the boundaries of Luzerne County. (Compl. at ¶ 1); *see also* (Doc. 1-1, at 3).

N.M. is a handicapped person with impairments that substantially limit his life activities, (Compl. at ¶¶ 19, 35), and is eligible for special education services under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (*Id.* at ¶ 20). N.M. has been identified as a student with a disability under both federal and Pennsylvania state education laws. Specifically, N.M. has been diagnosed with autism, a learning disability, and is classified as a student with emotional disturbance. (Doc. 1-1, at 2).

On February 25, 2015, while attending school through the Greater Nanticoke Area School District, N.M. was taken by ambulance to the emergency room at Wilkes-Barre General Hospital. (Compl. at ¶ 22). Later that same day, N.M. was transferred to First Hospital, located within the geographic boundaries of Defendant School District. N.M. remained at First Hospital for seventy (70) days, until he was discharged on May 5, 2015. (*Id.* at ¶¶ 23-24, 33). During N.M.'s stay at First Hospital, he received no special education services from the School District. (*Id.* at ¶¶ 25, 38).

Defendant is a public school located in Kingston Pennsylvania. In accordance with Pennsylvania law, it receives a substantial amount of federal funds and provides educational services to school aged children residing within the School District's boundaries. (Compl. at ¶¶ 3, 36). The School District is governed by a nine-member board commissioned by the Commonwealth of Pennsylvania to administer and enforce, among other things, the statutory mandates of the IDEA and other federally funded programs to eligible students enrolled in the school district. (*Id.*).

## B. The Administrative Record

Before discussing the allegations set forth in the Complaint, the Court will first address the administrative record.

### i. The Due Process Hearing

On April 28, 2015—one week before N.M.'s discharge from First Hospital—Plaintiff C.F. filed a special education due process complaint against Defendant. (Compl. ¶ 26); *see also* (Doc. 1-1, at 5). Plaintiffs alleged that, pursuant to § 13-1306 of the Pennsylvania Public School Code ("Section 1306"), N.M. qualified as a "non-resident inmate" while at First Hospital psychiatric facility. (Doc. 1-1, at 2) (citing 24 P.S. § 13-1306). Accordingly, Plaintiff asserted that under § 13-1306, the School District had statutory duties to provide N.M. with special education under the terms of his IEP. (*Id.*). Because N.M. received no educational programing while at First Hospital, Plaintiff claimed Defendant denied N.M. a free and appropriate public education ("FAPE") and sought an award of compensatory education. (*Id.*).

Defendant took the position that First Hospital, although located within the boundaries of the School District, was not covered under the terms of Section 1306 and therefore it had no obligation to provide FAPE to N.M. (*Id.* at 3). Alternatively, Defendant maintained that even if Section 1306 imposed upon it an obligation to provide a FAPE to N.M., Plaintiffs should not be entitled to any relief. (*Id.*).

3

A hearing was held on June 19, 2015, before Special Education Hearing Office Jake

McElligott, Esq. (the "Hearing Officer"). (Doc. 1-2, at 1). The Hearing Officer received

evidence and heard testimony from two witnesses: Plaintiff C.F. and Mary Agnes Kratz, the

director of secondary special education at Defendant School District. (Doc. 1-2).

The parties also stipulated to twelve findings of facts, including:

1. At all relevant times, N.M. "has been eligible for special education under the
   disability category of Emotional Disturbance with secondary exceptionalities of
   Autism and Specific Learning Disability." (Doc. 1-3, at 1).

2. Defendant "was not notified" of N.M.'s admission to First Hospital. (*Id.*).

3. N.M. was "never enrolled in the Wyoming Valley West School District." (*Id.*).

4. "Wyoming Valley West School District had no knowledge of the Student's
   existence until the filing of the due process complaint on April 28, 2015." (*Id.*).

5. "Wyoming Valley West School District has not received any bills from First
   Hospital or the Genesis School" regarding N.M. (*Id.* at 2).

6. "Wyoming Valley West School District was not notified of [N.M's] discharge from
   First Hospital by either First Hospital or [C.F.]." (*Id.*).

7. N.M. is currently enrolled in KidsPeace residential treatment facility. (*Id.*).

ii.     The Hearing Officer's Decision

On August 4, 2015, the Hearing Officer issued a decision where he found: (1)

Defendant was obligated to provide N.M. with FAPE pursuant to Section 1306; (2) N.M. was

denied FAPE and special education services from Defendant while he resided at First

Hospital; and (3) despite Defendant's denial of educational services, N.M. was not entitled

to a remedy of compensation education. (Compl. at ¶ 27); *see also* (Doc. 1-1).

4

a. The Hearing Officer's Findings of Fact

In addition to the stipulated findings of fact, *supra* at 4, the Hearing Officer made

additional findings, including:

1. N.M.'s "IEP from Greater Nanticoke is dated February 4, 2014, and its anticipated duration was through February 3, 2015." (Doc. 1-1, at 4).

2. N.M.'s "IEP team at Greater Nanticoke did not convene between February 3, 2015 and February 25, 2015." (*Id.*).

3. On February 25, 2015, N.M. was admitted to the emergency room at a local hospital and "[a] few hours later, the student was transported by ambulance to First Hospital," a "private psychiatric hospital serving children, adolescents, and adults." (*Id.*).

4. Defendant School District was not notified of the N.M.'s admission to First Hospital. However, C.F. "requested that First Hospital notify Greater Nanticoke of [N.M.'s] admission to the facility and signed a release for contact between First Hospital and Greater Nanticoke." (*Id.*).

5. To C.F.'s knowledge, First Hospital did not communicate with Greater Nanticoke. (*Id.* at 4-5).

6. While at First Hospital, N.M. "did not receive instruction under the IEP." (*Id.* at 5). C.F. "inquired about the education" for N.M. while he was at First Hospital and N.M.'s "doctor and counselor indicated that they were not aware of educational needs but would investigate." (*Id.*).

7. After C.F.'s initial inquiry, neither the doctor nor counselor communicated with C.F. about N.M.'s educational needs. (*Id.*).

8. Pursuant to the parties' stipulation, Defendant School District had no knowledge of N.M.'s existence until C.F.'s filing of the special education due process complaint on April 28, 2015. (*Id.*).

9. "Upon receiving the complaint, a District special education administrator contacted the chief executive officer of First Hospital. The hospital administrator

declined to share information with the District administrator because the student did not reside in the District." (*Id.* at 5-6).

10. "The District acknowledges that it is aware First Hospital employs special education teachers who provide instruction to students at First Hospital and, additionally, has communicated with these teachers." (*Id.* at 6). However, "the District has communicated with these teaches only regarding students who reside in the District." (*Id.*).

11. "Given [N.M.'s] lack of engagement with tasks/requirements at First Hospital, [N.M.] was barred from receiving educational services as a consequence." (*Id.* at 5).

      b.  The Hearing Officer's Conclusions of Law

In concluding that Defendant was obligated to provide N.M. with FAPE during his stay at

First Hospital, the Hearing Officer first interpreted the language of 24 P.S. §13-1306.

Section 1306 provides, in relevant part:

> The board of school directors of any school in which there is located any orphan asylum, home for the friendless, children's home, *or other institution for the care or training* of orphans *or other children*, shall permit any children who are inmates of such homes, but not legal residents in such district, to attend the public schools in said district. . . .

(Doc. 1-1, at 7) (quoting 24 P.S. §13-1306(a)) (emphasis added).  The statute further

mandates that:

> whenever a student described in this section is . . . (an) identified eligible student as defined in 22 PA Code Chapter 14 . . . the school district in which the institution is located is responsible for:  providing the student with an appropriate program of special education and training consistent with this act and 22 PA Code Chapter 14 . . . ; and maintaining contact with the school district of residence of the student for the purpose of keeping the school district of residence informed of its plans for educating the student and seeking advice of that district with respect to that student.

(*Id.* at 8) (quoting 24 P.S. §13-1306(c)).[1]

The Hearing Officer rejected the Defendant School's District's argument that First

Hospital is not a facility that "falls under the auspices of Section 1306," (Doc. 1-1, at 8)

concluding that "[s]ection 1306 uses language which is overly inclusive ('any orphan

asylum, home for the friendless, children's home, or other institution for the care or training

or [sic] or other children') and, frankly, pointed and connotative ('any children who are

inmates of such homes')." (Doc. 1-1, at 8-9). More specifically, he found that:

In this case, First Hospital is a facility/institution for the care of children. And although not explicitly addressed on this record, the record supports a conclusion that the student was not self-admitted or even voluntarily admitted; the student cannot leave the facility. A fair reading of the thrust of Section 1306 is: Students who find themselves in a facility away from their home school districts must look to the school district where the facility is located for educational services. This is the situation of the student at First Hospital; and as a student with an IEP, those educational services include special education.

Added to these general requirements of Section 1306 are the factual supports in this record. In its 2014-2017 Special Education Plan Report, the District is aware of First Hospital as a provider of educational services. The District is aware of educational components of students' stays at First Hospital, including specific services provided through IEPs provided by special educational teachers. And the District has communicated with First Hospital regarding the provisions of services to students with IEPs.

___

[1] The Hearing Officer noted that Section 1306 "envision[] that systems for educating non-resident students in facilities are in place, and communications flow between the school district where the facility is located and school districts of residence." (Doc. 1-1, at 8). Specifically, Section 1306(d) of the statute provides that "[t]he student's school district of residence and the school district in which the institution is located may agree to an arrangement of educational and procedural responsibilities other than as contained in (24 P.S. §13-1306(c)), provided that the agreement is in writing and is approved by the Department of Education after notice to and an opportunity to comment by the parents of the student." (Doc. 1-1, at 8) (quoting 24 P.S. §13-1306(d)).


Section 1306 mandates in a situation like the instant case the District is to assume responsibility for the special education programs of students who are enrolled as 'inmates' in institutions within its geographical boundaries but ostensibly outside its control. This is, understandably, an administrative burden for the District, or any school district where such facilities are geographically located. But it is clear that Section 1306 requires such an undertaking. In that regard, Section 1306 would seem to require, as a practice, that a school district where a facility/institution is located maintain regular contact with both the facility itself and, once informed on a student's admission, with the school district of residence (collaborating where possible even to the point of a written agreement adjusting between the districts, and in consultation with the parents, the stance or programing for a student). This paragraph, though, is provided by way of dicta. In short, the nature of First Hospital under the terms of Section 1306 supports a finding that the District had an obligation to provide FAPE to the student.

(Doc. 1-1, at 9-10).[2]

After concluding that Defendant "had obligations to provide FAPE" to N.M. and that

the "it is clear that the District did not provide any educational services to [N.M.] under the

IEP" (which the Hearing Officer attributed to Defendant's "lack of communication" with the

facility) the Hearing Officer turned to the appropriate remedy. Before discussing the

remedy, the Hearing Officer recognized that:

> [T]he student's parent is blameless in any regard. The parent communicated with the student's doctor and counselor at First Hospital regarding the student's educational needs and was told that those individuals would follow up regarding those needs. The parent also requested that First Hospital communicate/coordinate

---

[2] In a footnote, the Hearing Officer cited to another Pennsylvania statute, 24 P.S. §13-1308, which permits "[t]he district where the facility is located" to "bill the district of residence for the provision of the services provided to a student at the facility," which he found suggest "that undertaking the provisions under Section 1306 does not have adverse financial consequences for the district where the facility is located." (Doc. 1-1, at 10 n.13). "The use of releases, consents, and authorizations—provided to parents by and in collaboration with the facility—to allow the school district where a facility is located to contact parents and districts-of-residence would seem to be necessary. Again, this requires a degree of administrative attention by school districts where facilities are located, but, it seems clear, this is part of the communication/collaboration process necessary to abide by Section 1306." (*Id.* at 10 n.14).

with Greater Nanticoke, the student's district of residence. First Hospital took no action on any of these communications. Parent did not contact the District, but the onus is not on the parent to make sure a school district complies with its obligations under Section 1306, which, in this case the District did not.

(Doc. 1-1, at 11). As a result of Defendant's failure to comply with Section 1306, N.M. "went

without educational services under an IEP for the nearly ten weeks of the admission to First

Hospital," and i]t would seem then, that the District is liable for a compensatory education

remedy for the denial of FAPE." (Id.).

However, the Hearing Officer denied Plaintiff's request for compensatory education.

The entirety of the Hearing Officer's conclusion that, despite Defendant's failure to provide

N.M. with a FAPE, compensatory education was an inappropriate remedy is as follows:

> However, a critical factor intervenes to disrupt this remedy. Even had the District communicated and collaborated with First Hospital and Greater Nanticoke as Section 1306 envisions, it would not have been allowed to provide educational programming to the student due to the student's non-engagement with First Hospital tasks/requirements (see Finding of Fact 12).
>
> It is a difficult situation and a hard result for the parent. The parent has, as indicated, been entirely inquisitive and communicative regarding the student's need while at First Hospital. Yet the District, while failing in its duty under Section 1306 on these facts, would have been unable to provide services even if it had been entirely collaborative with First Hospital and Greater Nanticoke. On balance, it does not seem equitable to hold the District liable for a remedy in a situation where, even had it acted flawlessly, it could not meet its obligations.
>
> Accordingly, while the District did not meets its obligations to provide FAPE to the student under the terms of Section 1306, there will be no compensatory education awarded.

(Doc. 1-1, at 11-12).[3]  An Order followed, concluding that "the Wyoming Valley West School District did not meet its obligations to provide FAPE to [N.M.] under the terms of P.S. §13-1306.  On the record and as a matter of equity, however, there will be no award of compensatory education." (Id. at 13).

### C. Plaintiff Initiates the Instant Action

#### i.   Appeal From Hearing Officer Decision

On August 13, 2015, (nine days after the Hearing Officer's decision), Plaintiffs filed the instant action appealing the Hearing Officer's decision under the IDEA and alleging error in both the Hearing Officer's factual findings and legal conclusions.[4]  Plaintiffs further requested that the Court permit supplementation of the administrative record.  (Doc. 1, at 20).

#### ii.   Additional Claims

In addition, Plaintiff asserted claims under:  (1) Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq. (the "RA") alleging "Discrimination Based On Deliberate Indifference"

---

[3] The Hearing Officer's sole basis for denying Plaintiffs a remedy, N.M.'s "non-engagement with First Hospital tasks/requirements," cited only to the testimony of N.M.'s parent, C.F., where she testified that First Hospital's staff informed her that N.M. was "not doing chores at First Hospital." (Doc. 1-1, at 11-12); see also (Compl. at ¶ 32).  Plaintiffs allege that C.F.'s testimony was vague, not corroborated by N.M.'s IEP, did not identify any specific period of time during N.M.'s stay at First Hospital in which N.M. did not engage in chores, and provided no indication as to whether N.M.'s lack of chores was commensurate with his IQ. (Id. at ¶¶ 32, 46).

[4] Specifically, Plaintiff asserts that:  (1) the "Factual Record Requires Contrary Conclusion (IDEA)" (Count II); (2) "Failure To Apply Appropriate Legal Standard Regarding The Formulations of Compensatory Education (IDEA)" (Count III); and (3) "Failure To Apply Appropriate Legal Standard Regarding Burden Of Persuasion (IDEA)" (Count IV).  (Doc. 1, at 12-16).

(Count I); (2) the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA")

alleging discrimination (Count V); and (3) 42 U.S.C. § 1983, alleging a violation of the

Fourteenth Amendment's Equal Protection Clause (Count VI). (Compl. at ¶¶ 34-42, 61-70).

Moreover, Plaintiff asserted a claim styled as "Failure To Train And Supervise And/Or Adopt

Adequate Standards (Equal Protection Clause, 42 U.S.C. § 1983, RA, IDEA, ADA)" (Count

VII) and requested attorney's fees under the IDEA, RA, ADA, and 42 U.S.C. § 1988 (Count

VIII).  (Compl. at ¶¶ 71-80).[5]  (Doc. 1, at 19-20).

On October 12, 2015, Defendant moved to dismiss the entirety of Plaintiffs Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.   STANDARD OF REVIEW

### A.  IDEA Claims

At the outset, the Court notes that ordinarily on a motion to dismiss for failure to state a

claim, the court may not consider materials outside of the parties' pleadings.  Here,

however, Plaintiff's claims include an appeal from an administrative proceeding in which the

administrative record, including the transcript and decision, must be included in the initial

pleading.[6]  20 U.S.C. § 1415(i)(2)(C)(i).  The Third Circuit requires "district court[s] to apply

---

[5] Plaintiff sought money damages, attorney's fees and costs, and various non-monetary relief including, among other things, that the Court order any money damages to be placed into a third-party special trust and a remedial order requiring the School District to develop a policy of providing special education services to students at First Hospital.  (Doc. 1, at 19-20).

[6] "In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record." *Medici v. Pocono Mountain Sch. Dist.*, Civil Action No. 09-CV-2344, 2010 WL 1006917, at *3 (M.D. Pa. Mar. 16, 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

a nontraditional standard of review when considering an appeal from a state administrative decision under IDEA." *Mary T v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 241 (3d Cir. 2009). "'Although the District Court must make its own findings by a preponderance of the evidence, the District Court must afford 'due weight' to the Hearing Officer's decision.'" *Id.* (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). This standard "requires the court to consider the '[f]actual findings from the administrative proceedings . . . prima facie correct' and if the court fails to adopt those findings, it must explain its reason for departing from them." *Id.* If a district court agrees to hear additional evidence, it is "free to accept or reject the agency findings," based on the "new, expanded record." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (internal citation and quotation marks omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

In addition to Plaintiffs appeal of the Hearing Officer Decisions, (Counts II-IV), Defendants seek dismissal of the claims under the RA, ADA, and § 1983 (Counts I, V-VIII). A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although a

12

complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted).

## III. ANALYSIS

### A. Appeal Of Hearing Officer Decision

Plaintiff asserts claims under the IDEA, alleging that the Hearing Officer erred in both his factual findings, (Count II), and his legal conclusions (Counts III-IV). (Compl. at ¶¶ 43-60). Specifically, Plaintiffs challenges four of the Hearing Officer's factual findings, (Count II), and further allege that he failed to apply the appropriate legal standard regarding the formulation of compensatory education, (Count III), and failed to apply the appropriate standard regarding the burden of persuasion (Count IV).[7] Plaintiff further requests the Court grant its request to supplement the administrative recover. (Doc. 1, at 20).

Defendant counters that Plaintiff's appeal of the Hearing Officer's factual findings and legal conclusions must be dismissed for at least three reasons. First, Defendant argues that the Complaint must be dismissed because this Court owes "due deference," and "due weight" to the Hearing Officer's findings. (Doc. 8, at 6-7). Second, Defendant maintains that because "the Hearing Officer found that no compensatory education was warranted, the issue of the manner in which the a [sic] compensatory education award is formulated is moot." (*Id.*). Third, Defendant asserts dismissal is required because Plaintiffs "had more

---

[7] First, Plaintiffs allege that the Hearing Officer "failed to include relevant testimony in the Findings of Facts section of his written Decision and Order regarding [N.M.'s] entitlements to particular services through his IEP." (Compl. at ¶ 44). Second, Plaintiff asserts that the Hearing Officer "failed to include relevant information from documents entered into evidence in the Findings of Fact section of his written decision and Order regarding the Student's entitlement to particular services through his IEP." (*Id.* at ¶ 45). Third, Plaintiff maintains that the Hearing Officer "wrongfully relied upon vague testimony that was based on hearsay that was uncorroborated by [N.M.'s] IEP team as to whether [N.M.] was able to be educated." (*Id.* at ¶ 46). Finally, Plaintiff claims that the Hearing Officer "wrongfully relied upon [N.M.'s] unwillingness to do chores during [his] hospitalization as the sole basis for the Hearing Officer's denial of compensatory education." (*Id.* at ¶ 47).

than ample opportunity to present evidence in support of their claim for compensatory

education" and "to present witnesses and evidence to contradict the testimony elicited by

the Defendant [but] failed to do so," which is "not a sufficient reason for this Court to

overturn the Hearing Officer's decision." (*Id.* at 7-8). According to the Defendant:

> Here, the Hearing Officer correctly found that the Defendant would not have been
> able to provide instruction to the Student as a result of the Student's inability to
> receive instruction. *See*, Complaint at ¶ 28. Therefore, even though the Defendant
> did not provide education instruction to the Student, the Defendant would not have
> been able to provide such instruction as a result of First Hospital's determination that
> he was unable to receive such instruction. *See*, Complaint at ¶ 27(c). Because
> Plaintiffs failed to meet their burden of proof by preponderance of the evidence that
> the Student would have otherwise been able to receive instruction, and because the
> Hearing Officer's decision was based, in part, in equity, the Hearing Officer properly
> refused to award compensatory education.

(*Id.* at 9).

    As an initial matter, the Court notes that Defendant has not moved for judgment for

on the administrative record. *See Bristol Township Sch. Dist v. Z.B.*, Civil Action No. 15-

4604, 2016 WL 161600, at *1 (E.D. Pa. Jan. 14, 2016) (discussing "the parties' cross-

motions for judgment on the administrative record"). Instead, Defendant moves to dismiss

Plaintiff's appeal of the Hearing Officer's decision pursuant to Federal Rule of Civil

Procedure 12(b)(6). Notably, Defendant has not challenged the Hearing Officer's

conclusion that it denied N.M. FAPE, but instead argues that the Court must afford "due

weight" to the Hearing Officer's factual findings and legal conclusions that equitable

considerations warranted a denial of compensatory education. (Doc. 8, at 6-8). With that

background in mind, and cognizant of the "due weight" and "due deference" to which a

Hearing Officer's decision is entitled to, several considerations lead the Court to conclude that, at this juncture, granting Defendant's motion for outright dismissal of Plaintiff's IDEA appeal is inappropriate under the circumstances.[8]

First, Defendant moves to dismiss Counts II, III, and IV pursuant to Rule 12(b)(6) and has not moved for a judgment on the administrative record. Defendant has "not cited to any case in which a court has dismissed a complaint seeking an IDEA appeal based on a finding that the allegations plead [sic] were insufficient." *Dumont Bd. of Educ. v. J.T. ex rel I.T.*, Civil Action No. 09-5048 (JLL), 2010 WL 199630, at * 2 (D.N.J. Jan. 14, 2010). "The pleading requirements of Rule 8 must be read in light of the fact that this is an appeal of an administrative . . . decision in which this Court is required to defer to factual findings . . . unless other nontestimonial extrinsic evidence leads to a different conclusion." *Id.* "Thus, the Court and Defendants, upon filling of a complaint, have notice of the facts not only in the complaint but also the record below," which "is different than an initial non-appeal complaint, where the complaint is the only document informing a defendant of the claim being asserted." *Id.*

Second, as the Hearing Officer acknowledged, Plaintiff's IDEA claim is in many ways unique. *See* (Doc. 1-2, at 3) ("I'll receive opening statements on behalf of the parties, especially because there are the intersection of some legal or statutory things *that aren't*

---

[8] In a footnote Defendant notes that "[t]o date, Plaintiffs have not certified the administrative record." (Doc. 8, at 1). Defendant, however, fail to direct the Court to anything in the administrative record it considers incorrect or inauthentic. Because the Court is granting Plaintiff's request to supplement the administrative record, it will further require Plaintiff submit a certified copy of the administrative record.

*normally present in some of these hearings* and it will allow the parties to present that")
(emphasis added); (*Id.* at 5) ("As I say, there is a legal nexus here which is a little bit unique
in terms of most of the issues we encounter ..."). Third, in the IDEA Congress provided that
the district courts are required to "bas[e] its decision on the preponderance of the evidence,"
and "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(i)-
(iii).

  Here, Plaintiffs request that the Court enter an order permitting "an opportunity to
supplement the administrative record." (Compl. at 20). The Court believes supplementation
of the administration record is appropriate under the circumstances and grants Plaintiff's
request in accordance with a separate order that follows. *See D.K. v. Abington Sch. Dist.,*
696 F.3d 233, 255 (3d Cir. 2012) ("'[T]he question of what additional evidence to admit in an
IDEA judicial review proceeding . . . should be left to the discretion of the trial court.'")
(quoting *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 760 (3d Cir. 1995)). *See also Dudley
v. Lower Merion Sch. Dist..* Civil Action No. 10-2749, 2011 WL 5525343, at *1 (E.D. Pa.
Nov. 14, 2011) ("A court may elect to supplement the record based on a variety of
circumstances, including gaps in the administrative transcript . . . unavailability of a witness,
an improper exclusion of evidence by the administrative agency, and evidence concerning

relevant events occurring subsequent to the administrative hearing," among others).[9]

Accordingly, Defendant's motion to dismiss Counts II, III, and IV is denied.

### B.  Claims Under the Rehabilitation Act and the Americans With Disabilities Act

The Court next addresses Plaintiff's claims under the RA and ADA.  Count I asserts

a claim under the RA based on allegations of deliberate indifference, (Compl. at ¶¶ 34-42),

and Count V raises a discrimination claim under the ADA.  (*Id.* at ¶¶ 61-66).  The same

substantive standards apply to claims under the ADA and the RA.[10]  *See Ridley Sch. Dist. v.*

---

[9] A review of the administrative hearing transcript leads the Court to conclude that it would benefit from additional evidence supplementing the administrative record prior to making a determination as to whether the Hearing Officer erred.  To cite just one example:

> Q:  The exhibit found at P-6, is it fair to say that this is a sampling of invoices and not necessarily a complete list of invoices for students who are residents of the district for the current school year?
>
> Attorney Christian:  Objection; best evidence rule.  I made a request for the records for students who were billed for at Wyoming Valley West and this is all I received.  Best evidence rule.
>
> Attorney Evans:  May I respond?
>
> Hearing Officer McElligott:  Yeah.
>
> Attorney Evans:  The request was made on Tuesday afternoon for a request for records for a Friday hearing session.  I don't believe that I was under any obligation to provide these records at all; however, I indicated to Mr. Christian that I would do my best to at least get him a sampling of the invoices, which is currently what we have in front of us.
>
> Hearing Officer McElligott:  I don't—I'm going to overrule the objection.  You can answer the question.

(Doc. 1-2, at 15).

[10] "Section 203 of the ADA states that the remedies available under § 202 of the ADA are the same remedies available under § 505 of the RA.  Similarly, § 505 of the RA clearly states that the remedies available under § 504 of the RA shall be the same remedies available under Title VI of the Civil Rights Act of 1964."  *S.H. ex rel Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013).

*M.R.,* 680 F.3d 260, 282-83 (3d Cir. 2012) ("[T]he substantive standards for determining

liability under the Rehabilitation Act and the ADA are the same."). *See also McDonald v.*

*Commonwealth of Pennsylvania, Dept. of Public Welfare,* 62 F.3d 92, 95 (3d Cir. 1995)

("Whether suit is filed under the Rehabilitation Act or under the [ADA], the substantive

standards for determining liability are the same."). "Both acts prevent the discrimination of

individuals based on a disability, and have been interpreted to apply to prevent students

with disabilities from being denied a free appropriate public education by a school district."

*J.L. ex rel J.L. v. Ambridge Area Sch. Dist.,* 622 F. Supp. 2d 257, 272 (W.D. Pa. 2008).

"Because the same standards govern both the [Plaintiffs] RA and ADA claims, we may

address both claims in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of*

*Philadelphia,* 587 F.3d 176, 189 (3d Cir. 2009).

Plaintiffs allege that Defendant violated Section 504 of the RA by discriminating

against N.M. based on his disability and seek compensatory damages as well as equitable

relief. More specifically, Plaintiff alleges that Defendant discriminated against N.M. "by

showing deliberate indifference and/or intent to discriminate by failing to provide educational

services" during N.M.'s seventy (70) day confinement at First Hospital," (Compl. at ¶ 39),

and that "as a result of the Defendant's deliberate indifference and/or intent to refuse to

provide such services under the RA caused [N.M.] to suffer damage, trauma, and distress."

(*Id.* at ¶ 40). Plaintiff further alleges that Defendant "had actual knowledge that students

resided at First Hospital located within the geographic boundaries of the School District," (*Id.*

at ¶ 37), but nevertheless "failed to provide any services to [N.M.] for seventy (70) days while he resided at First Hospital. (*Id.* at ¶ 38).

Defendants seeks dismissal of Counts I and V, maintaining that "[a]lleging a mere free and appropriate public education (FAPE) violation alone, as Plaintiffs have done in this matter, is not enough for a claim of discrimination." (*Id.* at 4). Dismissal is further warranted, according to Defendant, because "[n]one of the Plaintiffs allegations even remotely rise to the level of deliberate indifference and, as a result, Plaintiffs cannot sustain a claim for discrimination under Section 504." (*Id.* at 5). Defendant also asserts, for the first time in its reply, that N.M. is not "otherwise qualified" to participate in school activities and thus his claims under the RA and ADA must fail. (Doc. 12, at 2).

"To establish claims under § 504 of the RA and the ADA, a plaintiff must demonstrate that:  (1) he has a disability, or was regarded as having a disability; (2) he was 'otherwise qualified' to participate in school activities; and (3) he was 'denied the benefits of the program or was otherwise subject to discrimination because of [his] disability.'" *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (quoting *Chambers*, 587 F.3d at 189). As Defendants recognize, it is not necessary to plead and prove intentional discrimination under the RA and ADA when seeking non-monetary relief. (Doc. 12, at 2). However, where, as here, a plaintiff seeks money damages a "finding of intentional discrimination" is required. *S.H.*, 729 F.3d at 261. The Third Circuit has held that pleading and proving "deliberate indifference" is sufficient to recover compensatory money damages

under Section 504 of the RA. *Id.* at 261-63. A showing of deliberate indifference requires "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* at 263 (internal citation and quotation marks omitted). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." *D.E.*, 765 F.3d at 269 (internal citation and quotation marks omitted).

It is well-settled that the failure to provide a disabled student with FAPE may also violate the ADA and the RA. *See, e.g., Chambers*, 587 F.3d at 189 (recognizing that "the failure to provide [FAPE] violates IDEA and therefore could violate [Section 504]") (internal citation and quotation marks omitted); *Andrew M v. Delaware Cnty. Office of Mental Health & Mental Retardation.*, 490 F.3d 337, 350 (3d Cir. 2007) ("Therefore, when a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA. However, it also violates the RA because it is denying a disabled child a guaranteed education merely because of the child's disability."). Because Defendant has not challenged that Hearing Officer's conclusions that it denied N.M. FAPE, and in light of the facts alleged in the Complaint, the Court determines that Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Although Plaintiff has plead enough facts to state a plausible claim that Defendant violated the RA and ADA, it does not necessarily follow that Plaintiffs plead sufficient facts to entitle it to money damages under the statutes. As discussed, in order to recover money damages under the RA and ADA Plaintiff must plead and ultimately prove that the

21

Defendant, either intentionally, or with deliberate indifference, denied benefits to which N.M. was entitled, or that N.M. was "otherwise subject to discrimination because of [his] disability.'" *D.E.*, 765 F.3d at 269. Deliberate indifference "require[s] a deliberate choice, rather than negligence or bureaucratic inaction." *S.H.*, 729 F.3d at 269. (internal citation and quotation marks omitted). There is a requirement of "*actual knowledge*" and "allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." *Id.* at 266 n.26 (emphasis in original). The Court concludes that the allegations set forth in the Complaint, and the administrative record attached thereto, contain sufficient factual allegations to survive Defendant's motion to dismiss its claim for money damages under the RA and the ADA.

First, prior to N.M.'s release from First Hospital on May 6, 2015, the Defendant had knowledge of N.M.'s existence. (Doc. 1-1, at 5-6). Soon after C.F. filed the due process complaint, in April 2015, Mary Agnes Kratz, the director of secondary special education for Defendant, testified that she contacted the Chief Executive Officer at First Hospital about N.M. (Doc. 1-1, 5); *see also* (Doc. 1-2 at 13). Although it appears that Defendant was not notified of N.M.'s admission to, and subsequent discharge from, First Hospital, at some point prior to N.M.'s release, Ms. Kratz testified that she became aware of N.M.'s existence. Moreover, C.F. testified that in April 2015—prior to N.M.'s release from First Hospital—she, her attorney, Mr. Christian, and Defendant's attorney, Ms. Evans, attended a "CASSP

meeting" which "was held at the Greater Nanticoke Area School District."[11] (Doc. 1-2, at 10).

*Second*, Plaintiff alleges, among other things, that Defendant "had actual knowledge that students resided at First Hospital located within the geographic boundaries of the School District," (Compl. at ¶ 37), and that Defendant "discriminated against [N.M.] by showing deliberate indifference and/or intent to discriminate by failing to provide any educational services for the period of time that [N.M.] resided at First Hospital." (*Id.* at ¶ 39). In addition, Ms. Kratz acknowledged that she was aware that First Hospital employs special education teachers who provide instruction to the Defendant's students at First Hospital, has communicated with those teachers, but only communicated with these persons concerning students who were previously enrolled at, or resided within the boundaries of, the School District.[12] (Doc. 1-1, at 6); (Doc. 1-2, at 13-14). Moreover, the administrative record suggests that Defendant's own special education plan identifies First Hospital "as a least restrictive environment facility where there may be students from Wyoming Valley West." (Doc. 1-2, at 12). And Ms. Kratz testified that she was responsible for paying bills

---

[11] On the current record, the events leading up to, and the purpose of, the "CASSP meeting" are entirely unclear. Equally unclear is the involvement of the Greater Nanticoke Area School District in this matter.

[12] Specifically, Ms. Kratz testified that she is "notified by First Hospital by either of the two special educations teachers the day that a student within the Wyoming Valley West School District begins to attend school services there." (Doc. 1-2, at 13). She further testified that "First Hospital is a private facility with two certified special education teachers who provide education to students from various districts when they are placed there," (*id.*), and that "First Hospital is the educational entity they have a—they are a private facility that provides education during the stay to the students as indicated on this bill." (*Id.*).

23

sent from First Hospital to Defendant that included an "educational component during the stay" at First Hospital. (Id.).

The Court thus concludes that Plaintiffs have alleged sufficient facts that, if true, may entitle them to money damages under the RA and ADA. This is not to say that Plaintiffs will ultimately prevail on these claims. Rather, at this stage in the proceedings Plaintiff has plead sufficient facts to give rise to a reasonable inference that Defendant was deliberately indifferent to the denial of N.M.'s needs by failing to provide any educational services for some period of time he was at First Hospital. Accordingly, the Court denies Defendant's motion to dismiss Counts I and V. See Tereance D. ex rel. Wanda D. v. Sch. Dist. of Philadelphia, 548 F. Supp. 2d 162, 169 (E.D. Pa. 2008) ("Because 'the remedies, procedures, and rights' under the ADA are the same as those under Section 504, the allegations of the complaint discussed above sufficiently state a cause of action under the ADA. As such, the Complaint adequate describes facts that, if true, entitle plaintiff to relief under section 504 and the ADA.") (quoting Jermey H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 279 (3d Cir. 1996)).

C. Plaintiff's Equal Protection Claims Under 42 U.S.C. § 1983 Must Be Dismissed

In Count VI Plaintiff alleges that Defendant discriminated against N.M. in violation of the Fourteenth Amendment's Equal Protection Clause. (Compl. at ¶¶ 67-70). According to Plaintiffs, Defendant has "a policy, practice or custom of refusing to provide services described in Counts I, II, III, IV, and V of this Complaint," and its policy, practice, or custom,

"caused [N.M.] to be treated dissimilarly from other students." (*Id.* at ¶ 68). Plaintiff further

allege that as a result of the Defendant's "refusal to provide such services, [N.M.] suffered

damages, trauma and distress and was denied Constitutional Equal Protection rights, as

referenced in Counts I, II, III, IV, and V of this Complaint." (*Id.* at ¶ 69).

In Count VII Plaintiff asserts a claim styled as "Failure To Train And Supervise And/Or

Adopt Adequate Standards (Equal Protection Clause, 42 U.S.C. § 1983, RA, IDEA, ADA)."

(*Id.* at ¶¶ 71-76).

> i.     Count VI: Discrimination in Violation of the Fourteenth
>        Amendment's Equal Protection Clause

Plaintiff alleges that the Defendant discriminated against N.M. in violation of the

Fourteenth Amendment's Equal Protection Clause and brings its claim pursuant to 42

U.S.C. § 1983. Defendant moves to dismiss Count VI, maintaining that Plaintiffs:

> have failed to allege a prima facie case of a violation of [N.M.'s] Equal Protection
> rights.    Plaintiffs have not alleged dissimilar treatment to 'similarly situated'
> individuals, nor have they alleged purposeful discrimination intended to disadvantage
> all member [sic] of a class of which he is a member.  Instead, Plaintiffs have only
> alleged a denial of FAPE, which is insufficient to sustain a claim pursuant to the
> Equal Protection Clause.  Therefore, this claim must be dismissed.

(Doc. 8, at 10).  The Court agrees with Defendant that Count VI fails to state a claim and

therefore must be dismissed.

"To succeed on a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate a

violation of a right protected by the Constitution or laws of the United States, committed by a

person acting under color of state law." *Swanger v. Warrior Run Sch. Dist.*, 4:11-CV-894,

2015 WL 5830822, at \*9 (M.D. Pa. Sept. 30, 2015) (slip copy) (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)). "Therefore, in evaluating a claim under § 1983, a Court must first "identify the exact contours of the underlying right said to have been violated" and then determine "whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Id.* (quoting *Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Where, as here, a Plaintiff brings a Section 1983 claim against a municipality, it must show that the alleged misconduct was caused by an official government policy, practice, or custom. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The Fourteenth Amendment provides, in relevant part, that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Third Circuit has interpreted this provision as "essentially a direction that all persons similarly situated should be treated alike." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (citation omitted). Accordingly, in order to succeed on a § 1983 claim alleging a denial of equal protection, the Plaintiff must allege and "prove the existence of purposeful discrimination," and "must demonstrate that they received different treatment from that received by other individuals similarly situated." *Chambers*, 587 F.3d. at 196 (internal citation and quotation marks omitted). To state a "facially plausible § 1983 claim for violation of the right to equal protection," a plaintiff must allege he is "'(1) a member of a protected class; (2) similarly situated to members of an

26

unprotected class; and (3) treated differently from members of the unprotected class.'" *Ruiz v. Strange*, Civil Action No. 15-2112, 2015 WL 7734131, at \*6 (E.D. Pa. Dec. 1, 2015) (quoting *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015)).

A review of the Complaint shows that all Plaintiffs alleges is that the Defendant has a "policy, practice or custom of refusing to provide services described in Counts I, II, III, IV, and V of this Complaint," and that this caused N.M. "to be treated dissimilarly to other students." (Compl. at ¶ 68). Plaintiffs do not allege that Defendant treated N.M. differently from other *similarly situated* students. *See Roquet v. Kelly*, Civ. A. No. 11-1763, 2013 WL 5570269, at \*8 (M.D. Pa. Oct. 9, 2013) (dismissing equal protection claim because complaint did not identify how plaintiff was treated differently from any other similarly situated student). Nor does Plaintiffs allege that N.M. is a member of a particular protected class. *Ruiz*, 2015 WL 7734131, at \*6 (dismissing equal protection complaint where plaintiff "does not allege that [the student] is a member of a protected class," and finding the complaint "deficient in this regard").

In addition, Plaintiffs fails to allege any facts concerning the Defendant's particular policy, practice, or custom alleged to be unconstitutional and that resulted in injury to N.M. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984) (to establish liability under a *Monell* theory of governmental policy or custom, "[a] plaintiff must identify the challenged policy, attribute it to the [government] itself, and show a causal link between the execution of the policy and the injury suffered.") (internal citation and quotation marks

omitted). Nor does the Plaintiff allege facts identifying any individual charged with

formulating the claimed unconstitutional policy, practice, or custom of the Defendant, or

identify any individuals charged with implementing such policy, practice, or custom. Viewing

"the facts alleged in the pleadings and the inferences to be drawn from those facts in the

light most favorable to the plaintiff," *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002), as

the Court must, the Court concludes that in Count VI Plaintiff failed to plead "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 566 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d

203, 205 (3d Cir. 2009) ("Conclusory or bare-bones allegations will no longer survive a

motion to dismiss."). Thus, the Court concludes that Count VI should be dismissed without

prejudice, with leave to file an amended complaint.

> ii.   Count VII: Failure to Supervise, Train, and Adopt Adequate
> Standards

Count VII alleges "Failure To Train And Supervise And/Or Adopt Adequate

Standards (Equal Protection Clause 42 U.S.C. §, RA, IDEA, ADA)." (Doc. 1, at 18). The

Complaint alleges that Defendant:  (1) "failed to adequately train its staff regarding its

obligation to provide educational services to the Student while he was placed in First

Hospital," (Compl. at ¶ 72); (2) "failed to adequately supervise its staff regarding its

obligation to provide educational services to [N.M.] while he was placed in First Hospital,"

(*Id.* at ¶ 73); and (3) "failed to adopt adequate standards regarding the provision of services

to [N.M.] while he was placed at First Hospital." (*Id.* at ¶ 74). Plaintiffs further allege that

Defendants "failure to provide adequate training, supervision and/or adoption of adequate standards caused [N.M. to be treated disparately from other students in the School District," (*Id.* at ¶ 75), and "caused [N.M.] to suffer damage, trauma, and distress." (*Id.* at ¶ 76).

Because Plaintiffs have not sufficiently pled an underlying equal protection violation, *supra* at 25-28, their failure to train and/or supervise claim necessarily fails.[13] *See Bridges v. Scranton Sch. Dist.*, ___ F. App'x. ___, 2016 WL 953003, at *5 (3d Cir. Mar. 14, 2016) (holding that the plaintiff "cannot recover from the School District under Section 1983 for a failure to train because there was no underlying constitutional violation") (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996)). "[T]he absence of an underlying constitutional violation precludes any supervisory liability on a 'knowledge or acquiescence' or 'failure to train theory.'" *Crawford v. Lappin*, 446 F. App'x 413, 416 (3d Cir. 2011). Nor has the Plaintiff alleged any facts from which the Court can reasonably infer that the Defendant failed to train, supervise, and/or adopt adequate policies, and that such failures caused N.M. to be treated differently from similarly situated students and resulted in harm to

---

[13] "Neither municipalities nor supervisors may be held liable under § 1983 simply on a theory of respondeat superior." *Haberle v. Troxell*, No. 5:15-cv-02804, 2016 WL 1241938, at *7 (E.D. Pa. Mar. 30, 2016) (slip copy) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). "For municipalities, that means there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation,' or that the municipality failed to adequately train the state actor 'and the constitutional wrong has been caused by that failure to train.'" *Id.* (quoting *City of Canton*, 489 U.S. at 385-87). "The rules are generally the same for supervisors who may be liable if they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' which may include a charge that the failed to adequately train their subordinates.'" *Id.* (quoting *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014). "Supervisors may also face liability if they 'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct.'" *Id.*

N.M. There are simply no facts in the Complaint concerning the Defendant's training, supervision, and/or adoption of the policies, practices, and customs alleged to violate N.M.'s constitutional rights. Nor are there any facts concerning individual employees of the Defendant responsible for training, supervising, and/or adopting policies of the Defendant. Therefore, the Court concludes that Count VII should be dismissed without prejudice, with leave to file an amended complaint.[14]

## D. Demand For Attorney's Fees

Finally, Defendant moves to dismiss Count VIII in which Plaintiff seeks attorney's fees under the IDEA, among other statutes. (Compl. at ¶¶ 77-80). "The IDEA provides that a district court may, in its discretion, award 'reasonable attorneys' fees' to a prevailing party." *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012) (quoting 20 U.S.C. § 1451(i)(3)(B)(i)(I)). "A plaintiff may obtain fees and costs when he 'prevails,' or obtains merits-based relief that 'materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 251 (3d Cir. 1999), *superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009). Because the Court has yet to determine whether the Plaintiff will

---

[14] To the extent that Count VII asserts a section 1983 claim for violations of the IDEA, RA, and ADA, the Court notes that such relief is unavailable, *see A.W. v. Jersey City Public Schs.*, 486 F.3d 791 (3d Cir. 2007), as Plaintiffs recognize. (Doc. 9, at 12) ("Plaintiffs concur that A.W. does stand for the proposition that claims raised under the IDEA, ADA and Section 504 . . . cannot attach to § 1983).

prevail or obtain any relief, dismissal of Count VIII is premature.  Accordingly Defendant's motion to dismiss Count VIII is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, (Doc. 6), will be granted in part and denied in part.  A separate order follows.

Robert D. Mariani
United States District Judge